1  DOUGLAS GILLIES, ESQ. (CA 53602)
2  douglasgillies@gmail.com
   3756 Torino Drive
3  Santa Barbara, CA 93105
4  (805) 682-7033
5  Attorney for Plaintiff
6  DARYOUSH JAVAHERI
7
8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10
11  DARYOUSH JAVAHERI,               )  No. CV 11 - 10072 JFW (FMOx)
12              Plaintiff,           )  **COMPLAINT**
13  v.                               )  1) Wrongful Foreclosure
14  JP MORGAN CHASE BANK N.A.,       )  2) Quasi Contract
15  and DOES 1- 10, inclusive,       )  3) Quiet Title
16              Defendants.          )  4) Declaratory and Injunctive Relief
17                                   )  5) No Contract/Fraud
18                                   )
19                                   )  Jury Trial Demanded
20
21
22
23
24
25
26
27
28

Complaint - *Javaheri v. Chase*          - 1 -

1

# INDEX

2  **INTRODUCTION**                                                              **3**

3  **PARTIES AND JURISDICTION**                                                  **4**

4  **JURY TRIAL DEMAND**                                                         **5**

5  **CLAIM FOR RELIEF**                                                          **5**

6  **BACKGROUND FACTS**                                                          **6**

7  **FIRST CAUSE OF ACTION – WRONGFUL FORECLOSURE**                              **7**

8  **SECOND CAUSE OF ACTION – QUASI CONTRACT**                                   **10**

9  **THIRD CAUSE OF ACTION - QUIET TITLE**                                       **11**

10  **FOURTH CAUSE OF ACTION - DECLARATORY & INJUNCTIVE RELIEF**                 **12**

11  **FIFTH CAUSE OF ACTION - NO CONTRACT (FRAUD)**                              **13**

12  **PRAYER**                                                                   **16**

13  **VERIFICATION**                                                             **17**

14  **PLAINTIFF'S EXHIBITS**                                                     **18**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1. During the first decade of the 21st Century, Washington Mutual Bank, FA (WaMu) and JPMorgan Chase Bank, NA (Chase), and other banks abandoned traditional underwriting practices and contributed to a frenzy of real estate speculation by issuing predatory loans that ultimately lowered property values in the United States by 30-60%. Kerry Killinger, CEO of WaMu, took home more than $100 million during the seven years he steered WaMu into bankruptcy. In March 2011, the FDIC filed a sixty-page complaint against Killinger and Stephen Rotella, WaMu COO, alleging gross negligence, breach of fiduciary duty, and fraudulent transfers. *FDIC v. Kerry Killinger, Stephen Rotella, et. al.,* Case No. 2:11-cv-00459 (WD WA). Defendants have not yet filed answers to the complaint (Order Granting Plaintiff's Motion Protective Order, filed 9/21/11, Document 80).

2. WaMu issued an unprecedented number of predatory loans between 2001 and 2008 knowing that borrowers, including Plaintiff, would default and lose their property. WaMu filled in fictitious inflated figures on Plaintiff's loan application so that it would meet underwriting guidelines and WaMu would collect inflated fees when it sold the loan to investors and then acted as servicer without taking any risk of loss when the borrower defaulted. Such blatant, systematic, and unregulated acts of fraud constituted a criminal enterprise. As a direct, proximate result of WaMu's behavior, countless families have lost their homes while courts deny borrowers the opportunity to conduct discovery in order to determine who owns their loans.

3. Plaintiff DARYOUSH JAVAHERI is facing foreclosure of his condominium at a Trustee's Sale scheduled for December 12, 2011. The loan application Plaintiff submitted to Washington Mutual consisted only of his name and address and three account numbers. Plaintiff's Universal Residential Loan Application was filled in by employees of WaMu to meet underwriting standards so that WaMu would collect fees when it sold the loan to unsuspecting investors in mortgage-backed securities and collateralized debt obligations.

**PARTIES AND JURISDICTION**

4. Plaintiff DARYOUSH JAVAHERI is the owner of the single-family condominium located at 10660 Wilshire Blvd #1401, Los Angeles, California 90024, APN 4326-001-153 ("the Wilshire Property"). He acquired it by a Grant Deed recorded on December 19, 1995 (Plaintiff's **Exhibit 1**).

The legal description is:

A condominium composed of:

Parcel 1:

(A) An undivided $1/132^{nd}$ interest in and to Lot 1 of Tract No. 39372, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 987, Pages 32 and 33 of maps, in the Office of the County Recorder of said County.

Except therefrom all of the 132 units of Tract 39372 as shown and defined on the Condominium Plan, recorded September 23, 1981 as Instrument No. 81-946528, Official Records, of said County.

(B) Unit 1401, as shown and defined on the condominium plan referred to above.

Parcel 2:

An exclusive easement, appurtenant to Parcel 1 above, for parking purposes, over that portion of Lot 1 of said Tract 39372, shown as parking spaces 235 and 236 on the parking plan attached to the declaration of restrictions, recorded September 23, 1981 as Instrument No. 81-946527, Official Records.

Parcel 3:

An exclusive easement appurtenant to Parcel 1 above, for maids rooms over that portion of Lot 1 of said Tract No. 39372, as shown as Areas 138-MR as shown and defined on Condominium Plan referred to above.

5. Defendant JP MORGAN CHASE BANK, NATIONAL ASSOCIATION,

1    ("Chase"), a New York corporation licensed to do business in California, claims to

2    be a note holder, beneficiary, or servicer of a Note secured by the Wilshire

3    Property.

4         6.  Defendants Does 1-50, inclusive, are sued under fictitious names. When

5    their true names and capacities are known, Plaintiff will amend this Complaint and

6    insert their names and capacities. Plaintiff is informed and believes and thereon

7    alleges that each of these fictitiously named defendants is legally responsible,

8    negligently or in some other actionable manner, for the events and happenings

9    hereinafter referred to and proximately caused the injuries and damages to plaintiff

10   as hereinafter alleged, or claims some right, title, estate, lien, or interest in the

11   property adverse to Plaintiff's title. Their claims constitute a cloud on Plaintiff's

12   title to the property, or they participated in unlawful or fraudulent acts that resulted

13   in injury to Plaintiff's person or property. Upon information and belief, Does 1-30

14   claim to be successors in interest to the Subject Mortgage by virtue of Plaintiff's

15   loan having been made a part of a securitization process wherein certain residential

16   mortgages and promissory notes were securitized by aggregating a large number of

17   promissory notes into a mortgage loan pool, then selling security interests in that

18   pool of mortgages to investors by way of "Secondary Vehicles".

19        7.  There is diversity of citizenship between Plaintiff and Defendant Chase,

20   and the matter in controversy exceeds, exclusive of interest and costs, the sum of

21   $75,000. This court has jurisdiction of the action pursuant to 28 U.S.C. 1332(a).

22   Declaratory relief is authorized under 28 U.S.C. 2210.

23

24                     **JURY TRIAL DEMAND**

25       8. Plaintiff demands a jury trial on all issues.

26

27                        **CLAIM FOR RELIEF**

28       9. Plaintiff brings this action against Chase and Does 1 through 50 for

attempting to sell Plaintiff's Wilshire Property at a trustee's sale and deprive Plaintiff of his property without a lawful claim. Plaintiff seeks to clear his title.

### BACKGROUND FACTS

10. Plaintiff is the owner of the Wilshire Property under the terms of a Grant Deed executed by Julie Gilbert in favor of Daryoush Javaheri on November 20, 1995 (**Exhibit 1**).

11. Plaintiff's Residential Loan Application (**Exhibit 2**), Adjustable Rate Note (**Exhibit 3**) and Deed of Trust (**Exhibit 4**) are dated December 6, 2006.

12. Plaintiff is named as Borrower on the Note and on the Deed of Trust dated December 6, 2006 ("DOT"). Washington Mutual Bank, FA is identified on the Note and Deed of Trust as "Lender."

13. Between December 14 and 31, 2006, WaMu transferred Plaintiff's Note to Washington Mutual Mortgage Securities Corporation. An Assignment of Deed of Trust dated May 18, 2010 (Plaintiff's **Exhibit 5**), indicates that the Note was sold to Washington Mutual Mortgage Pass-Through Certificates Series 2007-HY1 Trust and became a part of, or was subject to, a Loan Pool, a Pooling and Servicing Agreement, a Collateralized Debt Obligation, a Mortgage-Backed Security, a Mortgage Pass-Through Certificate, an Investment Trust, and/or a Special Purpose Vehicle. Thereafter, WaMu acted solely as a servicer of the loan, and was neither a Lender nor a Beneficiary after December 2006. The closing date for Series 2007-HY1 REMIC Trust was January 24, 2007, which was the cut-off date for adding loans or securities to the pool under the Pooling and Servicing Agreement and New York State trust and securities law. The Assignment of DOT (Exhibit 5) is invalid.

14. CHASE claims to be a note holder, lender, beneficiary, or servicer of the Subject Mortgage, but Chase did not record a claim of ownership of the mortgage.

15. California Reconveyance Company ("CRC"), a wholly owned subsidiary of Chase, filed a Notice of Default (**Exhibit 6**) against the Property on 5/20/2010.

1    16. On or about November 18, 2011, CRC recorded a Notice of Trustee's

2   Sale ("NOTS") stating that the Wilshire Property would be sold at public auction

3   on December 12, 2011 (**Exhibit 7**). The NOTS bears the purported signature of

4   Marco Rivera, Assistant Secretary of California Reconveyance Company. Chase is

5   not named on the NOTS.

6

7          **FIRST CAUSE OF ACTION – WRONGFUL FORECLOSURE**

8    17. Plaintiff re-alleges and incorporates by reference the allegations

9   contained in paragraphs 1 through 16.

10    18. Days after WaMu originated the loan, WaMu transferred all beneficial

11   interest in the loan to an investment pool: the Series 2007-HY1 REMIC Trust.

12    19. Neither WaMu, CRC, nor Chase has recorded a transfer of beneficial

13   interest in Plaintiff's note to Chase.

14    20. Chase does not have standing to enforce the Note because Chase is not

15   the owner of the Note, Chase is not a holder of the Note, and Chase is not a

16   beneficiary under the Note. Chase does not claim to be a holder of the Note or a

17   beneficiary. Chase is merely named as a contact in the Notice of Default. If Chase

18   could prove that it is a servicer, Chase could not foreclose on Plaintiff's property

19   without authorization from the Lender under Paragraph 22 of the Deed of Trust.

20    21. Plaintiff is informed and believes that Chase cannot produce an original

21   Note because Chase does not own the loan and cannot identify the owner of the

22   loan. Chase did not purchase the loan when it took assumed certain assets of

23   WaMu in September 2008 because WaMu had sold its beneficial interest in the

24   loan two years earlier. Plaintiff's loan was not identified as an asset in the Purchase

25   and Assumption Agreement under which Chase purchased certain assets of WaMu.

26    22. A power of sale is conferred by the mortgage under Cal. Civ. Code

27   §2924. The Adjustable Rate Note states, "Lender or anyone who takes this Note by

28   transfer and who is entitled to receive payments under this Note is called the "Note

Holder."  The Note states in paragraph 7(C):  "Notice of Default. If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount." The Note gives the right to collect, if timely payments are not made, to the Lender and anyone who takes the Note by transfer. This does not include a servicer who is not the Note Holder.

23.  According to Plaintiff's Deed of Trust, the "Lender" is WASHINGTON MUTUAL BANK, FA.

Consistent with the language of the Note, only the Lender is authorized under paragraph 22 of the DOT to accelerate the loan:

"Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant of agreement in this Security Instrument…

"If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located." (DOT page 13, paragraph 22).

24.  Washington Mutual Bank remained the Lender for no more than a few days until it sold the loan. Thereafter, it was, at most, a servicer of the loan. The Note Holder or Lender was the Investment Trust or that funded the loan.

25. Paragraph 24 of the DOT (Plaintiff's Exhibit 4) states:

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is

1   recorded and the name and address of the successor trustee. Without
2   reconveyance of the property, the successor trustee shall succeed to all
3   the title, powers and duties conferred upon the Trustee herein and by
4   Applicable Law. This procedure for substitution of trustee shall govern
5   to the exclusion of all other provisions for substitution.

6   Chase seeks to proceed with foreclosure of Plaintiff's property even though
7   it cannot identify the Lender.

8   26. On May 18, 2010, CRC recorded an Assignment of Deed of Trust
9   (Exhibit 5) signed by robosigner Colleen Irby, "Officer of JPMorgan Chase Bank".
10  No authority is cited for Chase to assign a beneficial interest in the Deed of Trust.

11  27. On May 20, 2010, CRC recorded a Notice of Default ("NOD"), attached
12  hereto as Exhibit 6, describing the Wilshire Property with instructions that Plaintiff
13  contact JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, in
14  Jacksonville, FL to stop the foreclosure. The NOD was signed by Luis Alvarado,
15  "Assistant Secretary". The "Declaration of Compliance (Cal Civil Code Section
16  2923.5(b)" attached to the NOD was signed under penalty of perjury by robosigner
17  Clement J. Durkin on behalf of JPMorgan Chase Bank, National Association.
18  Chase is described in the Declaration of Compliance as "The undersigned
19  mortgagee, beneficiary or authorized agent." Washington Mutual is described in
20  the NOD as the beneficiary. However, Chase's interest in WaMu's assets was
21  acquired in September 2008, and WaMu's beneficial interest had terminated when
22  WaMu sold the Note to investors in 2006.

23  28. Chase was not the beneficiary and so Colleen Irby had no authority to act
24  on behalf of the beneficiary if and when she signed the Assignment of Deed of
25  Trust recorded on May 20, 2010. The Assignment of Deed of Trust was fraudulent,
26  so CRC was not authorized to initiate foreclosure against Plaintiff when it recorded
27  the Notice of Default, and it was not acting for the Lender when it filed the Notice
28  of Trustee's Sale. Therefore, the foreclosure pursuant to Trustee's Sale is illegal.

## SECOND CAUSE OF ACTION – QUASI CONTRACT

29.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 28.

30. Chase demanded monthly mortgage payments from Plaintiff starting in October 2008, and continued to collect payments from Plaintiff for approximately six months. Plaintiff reasonably relied upon Chase's assertion that it was entitled to payments.

31. Chase knowingly accepted the payments and retained them for its own use knowing that WaMu was not a beneficiary under Plaintiff's Note on the date that its assets were transferred to Chase and therefore Chase did not acquire any right from WaMu to accept or keep Plaintiff's payments.  It would be inequitable for Chase to retain the payments it received from Plaintiff. The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money.

32.  The DOT states in Paragraph 23:  "Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee." The obligations to WaMu under the DOT were fulfilled when WaMu received the balance on the Note as proceeds of sale through securitization to private investors. Chase has been unjustly enriched by demanding and collecting monthly payments from Plaintiff in the amount of $45,000.00.

33.  Plaintiff seeks restitution for any payments he made to Chase that were not paid to the lender or beneficiary, if any, and were unjustly retained by Chase. Plaintiff also seeks damages in excess of $100,000 for depreciation to his Wilshire Property as a result of the wrongful foreclosure proceedings initiated by Chase.

## THIRD CAUSE OF ACTION - QUIET TITLE

34.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 33.

35.  Plaintiff seeks to quiet title against the claims of Defendants and all persons claiming any legal or equitable right, title, estate, lien, or adverse interest in the Wilshire Property as of the date the Complaint was filed pursuant to Cal. Code Civil Procedure §760.020.

36.  Plaintiff is the titleholder of the Wilshire Property according to the terms of his Grant Deed (Exhibit 1). WaMu securitized Plaintiff's single-family residential mortgage loan through Washington Mutual Mortgage Securities Corp. Plaintiff is informed and believes that the lawful beneficiary has been paid in full.

The DOT states in paragraph 23:

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it.

37.  The DOT does not state that Plaintiff must pay all sums. It states that all secured sums must be paid. The obligations owed to WaMu under the DOT were fulfilled and the loan was fully paid when WaMu received the balance on the Note as proceeds of sale through securitization of the loan and insurance proceeds from Credit Default Swaps. Chase did not purchase the loan from the FDIC on 9/25/08.

38.  Defendants' claims are adverse to Plaintiff because defendants are not Lenders or a holders of the Note, none of the defendants can prove any interest in the Note or show that the Note is secured by the DOT, as well as for the reasons set forth in the preceding causes of action. As such, Defendants have no right, title, lien, or interest in the Wilshire Property.

39.  Plaintiff therefore seeks a judicial declaration that the title to the

Wilshire Property is vested solely in Plaintiff and that Defendants have no right, title, estate, lien, or interest in the Property and that Defendants and each of them are forever enjoined from asserting any right, title, lien or interest in the Property adverse to Plaintiff.

## FOURTH CAUSE OF ACTION - DECLARATORY & INJUNCTIVE RELIEF

40.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 39.

41.  An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties. Plaintiff contends that:

(a) Chase is not Lender, the present holder in due course, or beneficiary of a Promissory Note executed by Plaintiff. However, Defendants contend that Chase is the present owner and beneficiary of a Promissory Note executed by Plaintiff; and,

(b) Defendants are not real parties in interest, do not have standing, and are not entitled to accelerate the maturity of any secured obligation and sell the Wilshire Property because they are not a Lender, beneficiary or authorized agent of a beneficiary under the purported Note. However, Defendants assert that they are entitled to sell the Property.

42.  Plaintiff desires a judicial determination of his rights and duties as to the validity of the Note and DOT, and Defendants' rights to proceed with nonjudicial foreclosure on the Wilshire Property. Unless restrained, Defendants will sell Plaintiff's property, or cause it to be sold, to Plaintiff's great and irreparable injury, for which pecuniary compensation would not afford adequate relief.

43.  Defendants' wrongful conduct, unless and until restrained by order of this court, will cause great irreparable injury to Plaintiff as the value of the property declines under threat of foreclosure and Plaintiff faces the prospect of eviction.

44.  If the foreclosure sale is allowed to proceed, the burden on Plaintiff significantly outweighs the benefit to Defendants, and each of them.  By contrast, if the foreclosure sale is enjoined, the burden to defendants is minimal and is not outweighed by the benefit to Plaintiff.

45.  Plaintiff has no adequate remedy at law for the injuries currently being suffered and that are threatened. It will be impossible for Plaintiff to determine the precise amount of damage that he will suffer if Defendants' conduct is not restrained and Plaintiff must file a multiplicity of suits to obtain compensation for his injuries.

## FIFTH CAUSE OF ACTION - NO CONTRACT (FRAUD)

46.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 45.

47.  Plaintiff is informed and believes that WaMu routinely approved predatory real estate loans to unqualified buyers in 2006 and implemented unlawful lending practices by encouraging brokers and loan officers to falsify borrowers' income and assets to meet underwriting guidelines when borrowers were not qualified. WaMu employees falsified Plaintiff's Assets and Liabilities.

48.  Plaintiff followed the instructions of WaMu Chief Loan Officer Jack Skidmore when he submitted a Loan Application to WaMu that contained only his name, address, phone number, social security number, and bank account number. Mr. Skidmore employee filled out the application and presented it for Plaintiff's signature on 12/6 showing the condominium's inflated market value as $17 million.

49.  Plaintiff is informed and believes that WaMu pre-sold Plaintiff's mortgage to investors based on inflated valuation. Immediately after he signed the Note, WaMu transferred all of its interest in the Note to an investment bank that bundled Plaintiff's Note with numerous other residential mortgages into residential mortgage-backed securities ("RMBS") which were structured into synthetic

collateralized debt obligations ("CDOs") and sold to investors in Washington Mutual Mortgage Pass-Through Certificates Series 2007-HY1 Trust.

50.   Plaintiff is informed and believes that the investment bank intended to short the portfolio it helped to select by entering into credit default swaps to buy protection against the certain event that the promissory notes would default. WaMu expected that Plaintiff would not have the ability to repay the loan. It was not just that WaMu was unconcerned with a possible outcome that Plaintiff would default; WaMu knew that he could not perform and expected him to default on the loan.

51.   Washington Mutual Bank, the sponsor of the securitization transaction, was a wholly owned subsidiary of Washington Mutual Inc. Securitization of mortgage loans was an integral part of Washington Mutual Inc.'s management of its capital. It engaged in securitizations of first lien single-family residential mortgage loans through Washington Mutual Mortgage Securities Corporation, as depositor, beginning in 2001. WaMu acted only as a servicer of Plaintiff's loan.

52.   WaMu failed to disclose to Plaintiff that its economic interests were adverse to Plaintiff and that WaMu expected to profit when Plaintiff found it impossible to perform his obligation and defaulted on his mortgage.

53.   A necessary element in the formation of an enforceable contract under the common law is a meeting of the minds. Two or more parties must share some expectation that a future event will occur. Plaintiff expected that he would borrow money from WaMu, he would pay it back, and then he would own the Property. WaMu expected that Plaintiff would borrow money, he would not be able to pay it back, and then WaMu or the investors would own the Property. Since there was no shared expectation—no meeting of the minds—no contract was formed between Plaintiff and WaMu when WaMu falsified his application to qualify for the loan.

54.   In addition to WaMu's expectation that Plaintiff would lose title to the Wilshire Property through foreclosure, WaMu anticipated transferring the Note to investors immediately after Plaintiff signed the Note. Plaintiff is informed and

1   believes that WaMu purchased credit default insurance so that WaMu would
2   receive the balance on the Note when Plaintiff defaulted, in addition to any money
3   WaMu received when it securitized the Note and sold it to investors.

4       55.  Not only did WaMu dispense with conventional underwriting practices
5   in 2006, it also paid premium fees and other incentives to mortgage brokers who
6   signed up the riskiest borrowers. Fueled by spiraling profits to Chase, WaMu, and
7   other banks, common law principles of contract formation, customary underwriting
8   practices, and statutory procedures for transferring interests in real property,
9   including the recordation of transfers of interests in real property, disintegrated and
10  the system ceased to function as a reliable means to transfer clear title to property.

11      56.  WaMu expected that Plaintiff would not perform as merely one victim
12  in a scheme in which:

13  (1) WaMu's fees as servicer would be greater as the number of loans increased;

14  (2) WaMu's fees as servicer would be greater as the balances of loans increased;

15  (3) WaMu would recover the unpaid balance of Plaintiff's loan through credit
16  default insurance when Plaintiff inevitably defaulted; and

17  (4) All risk of loss in the event of Plaintiff's default would be borne by investors
18  or U.S. taxpayers, not WaMu as the servicer.

19      57.  Plaintiff's participation in the mortgage contract was procured by overt
20  and covert misrepresentations and nondisclosures. The parties did not share a
21  single expectation with respect to any of the terms of the mortgage contract and
22  therefore the contract was void *ab initio*.

23      58. No enforceable contract was formed between Plaintiff and WaMu, so his
24  Note and DOT were never assets of WaMu that could be acquired or assumed by
25  Chase from the Federal Deposit Insurance Corporation (FDIC) as receiver after
26  WaMu was seized by the Office of Thrift Supervision on September 25, 2008.

27      59.  Chase Bank has no right to receive payment under Plaintiff's mortgage
28  loan and has no right to foreclose on his Wilshire Property. Plaintiff does not seek

1    rescission of the contract. He alleges that the contract was void *ab initio* as a result

2    of fraud in the inducement and fraud in the execution of the so-called agreement.

3

4                                          **PRAYER**

5    WHEREFORE, Plaintiff requests judgment as follows:

6        1.  That this court issue a Temporary Restraining Order and Preliminary

7    Injunction restraining Defendants, and each of them, during the pendency of this

8    action, from continuing with their efforts to conduct a Trustee's Sale of the

9    Wilshire Property.

10       2.  That the attempted foreclosure of the Wilshire Property be declared illegal

11   and that Defendants be enjoined and restrained from selling the Wilshire Property

12   or attempting to sell it or causing it to be sold, either under power of sale pursuant

13   to trust deed or by foreclosure action, and from posting, publishing, or recording

14   any notice of default or notice of trustee's sale contrary to state or federal law.

15       3.  That the underlying loan transaction be declared void as a result of

16   Defendants' and WaMu's misrepresentations, fraud, concealment, and predatory

17   loan practices.

18       4.  That Defendants make restitution to Plaintiff according to proof for

19   payments made to Chase that were not deposited in the account of the Lender.

20       5.  Actual damages for depreciation to the Property in excess of $100,000.00.

21       6.  For a judgment determining that Plaintiff is the owner in fee simple of the

22   Wilshire Property against the adverse claims of Defendants and that Defendants

23   have no interest in the subject property adverse to Plaintiff.

24       7.  For costs of suit and reasonable attorney fees.

25       8.  For any and all other and further relief that may be just in this matter.

26

27       Date: December 2, 2011

28                                                    Douglas Gillies, Attorney for Plaintiff

**VERIFICATION**

Daryoush Javaheri declares:

    I am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know its contents. The same is true of my own knowledge, except as to those matters that are alleged on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in Los Angeles, California, on December 2, 2011.

Daryoush Javaheri

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S EXHIBITS**

<u>Exhibit</u>                          <u>Description</u>

1          Grant Deed 11/20/1995

2          Universal Residential Loan Application 12/6/2006

3          Adjustable Rate Note 12/6/2006

4          Deed of Trust 12/6/2006

5          Assignment of Deed of Trust 5/18/2010

6          Notice of Default 5/18/2010

7          Notice of Trustee's Sale 11/18/2011

# EXHIBIT 1

95 2019849

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
Daryoush Javaheri
10660 Wilshire Blvd. #1401 & Maids
Los Angeles, CA

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

4:41 PM DEC 19 1995

Space Above This Line for Recorder's Use Only

A.P.N.: 4326-1-153          Order No.: 9504954-30          Escrow No.: A-61076

## GRANT DEED

TRANSFER TAX
NOT A PUBLIC RECORD
not a public record

THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY ___  ___ & CITY ___
[ X ]  computed on full value of property conveyed, or
[   ]  computed on full value less value of liens or encumbrances remaining at time of sale,
[   ]  unincorporated area;  [ X ] City of Los Angeles , and

FEE $10    P
2

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
Androcles, Inc.,

hereby GRANT(S) to Daryoush Javaheri, a single man

the following described property in the City of Los Angeles, County of Los Angeles State of California:

SEE EXHIBIT "A" ATTACHED FOR THE LEGAL DESCRIPTION.

Androcles, Inc.,

By: _____
Julie A. Gilbert
Authorized Signature

Document Date: November 20, 1995

STATE OF CALIFORNIA          )SS
COUNTY OF  LOS ANGELES       )
On     11/20/95      before me,    Rosmen A. Paquio
personally appeared    Julie A. Gilbert
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument
the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument
WITNESS my hand and official seal.

Signature  Rosmen A. Paquio

ROSMEN A. PAQUIO
COMM. # 1020842
Notary Public — California
LOS ANGELES COUNTY
My Comm. Expires MAR 20, 1998
This area for official notarial seal.

Mail Tax Statements to:  SAME AS ABOVE  or  Address Noted Below

ORDER NO.: 9504954-30

EXHIBIT "A"

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

A) AN UNDIVIDED 1/132ND INTEREST IN AND TO LOT 1 OF TRACT NO.
39372, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 987 PAGE(S) 32 AND 33
OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OF THE 132 UNITS OF TRACT 39372 AS SHOWN
AND DEFINED ON THE CONDOMINIUM PLAN, RECORDED SEPTEMBER 23,
1981, AS INSTRUMENT NO. 81-946528 OFFICIAL RECORDS OF SAID
COUNTY.

ALSO EXCEPT THEREFROM ALL OIL, GAS, HYDROCARBON SUBSTANCES AND
MINERALS IN, ON AND UNDER SAID LAND, BUT WITHOUT THE RIGHT OF
ENTRY ON THE SURFACE OF SAID LAND OR IN AND TO THE SUBSURFACE
THEREOF TO A DEPTH OF 500 FEET FROM THE SURFACE FOR THE PURPOSE
OF EXPLORING FOR, DRILLING, BORING, MARKETING OR REMOVING SAID
SUBSTANCES, AS RESERVED IN THE DEED RECORDED NOVEMBER 2, 1982 AS
INSTRUMENT NO. 82-1099941.

B) UNIT 1401, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN
REFERRED TO ABOVE.

PARCEL 2:

AN EXCLUSIVE EASEMENT, APPURTENANT TO PARCEL 1 ABOVE, FOR
PARKING PURPOSES, OVER THAT PORTION OF LOT 1 OF SAID TRACT
39372, SHOWN AS PARKING SPACES 235 AND 236 ON THE PARKING PLAN
ATTACHED TO THE DECLARATION OF RESTRICTIONS, RECORDED SEPTEMBER
23, 1981 AS INSTRUMENT NO. 81-946527 OFFICIAL RECORDS.

PARCEL 3:

AN EXCLUSIVE EASEMENT APPURTENANT TO PARCEL 1 ABOVE, FOR MAIDS
ROOMS OVER THAT PORTION OF LOT 1 OF SAID TRACT NO. 39372, AS
SHOWN AS AREAS 138-MR AS SHOWN AND DEFINED ON CONDOMINIUM PLAN
REFERRED TO ABOVE.

## 95 2019849

3

# EXHIBIT 2

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower" as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community, property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an applications for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____     Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain): ☐ FHA  ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case No. 3010901449-101 |
|---|---|---|---|

| Amount $ 975,000 | Interest Rate 6.250 % | No. of Months 360 | Amortization Type: ☒ Fixed Rate  ☐ GPM  ☐ ARM (type): ☐ Other (explain): |
|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, & ZIP)   COUNTY: LOS ANGELES   No. of Units 1

10660 WILSHIRE BLVD, #1401, LOS ANGELES, CA 90024

Legal Description of Subject Property (attach description if necessary)   [SEE PAGE 4 LEGAL DESC]   Year Built 1980

PARCEL # 4326-001-153

Property Type  ☒ 1-4 SFR   ☐ Manufactured Home

Purpose of Loan  ☒ Refinance  ☐ Construction-Permanent  ☐ Other (explain): ☐ Purchase  ☐ Construction  ☐ Home Improvement

Property will be: ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost $ 900,000 | Amount Existing Liens $ 113,340 | Purpose of Refinance OTHER | Describe Improvements ☐ made ☐ to be made  Cost: $ |
|---|---|---|---|---|

Title will be held in what Name(s) DARYOUSH JAVAHERI

Manner in which Title will be held [SEE PAGE 4 TITLE HELD]

Estate will be held in: ☒ Fee Simple  ☐ Leasehold (show expiration date)

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

OTHER

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) DARYOUSH JAVAHERI | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number 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 | Home Phone (incl. area code) 310-475-5391 | DOB (MM/DD/YYYY) 01/03/1963 | Yrs. School 14 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married  ☒ Unmarried (incl. single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no.  ages | ☐ Married  ☐ Unmarried (incl. single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|

Present Address (street, city, state, ZIP)  ☒ Own  ☐ Rent 10.0 No. Yrs.
10660 WILSHIRE BLVD #1401
LOS ANGELES, CA 90024

Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs.

Mailing Address, if different from Present Address
10660 WILSHIRE BLVD. # 1401
LOS ANGELES, CA 90024

Mailing Address, if different from Present Address

If residing at present address for less than two years, complete the following:

Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs.

Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs.

## IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Name & Address of Employer  ☒ Self Employed DARYOUSH DUP 10660 WILSHIRE BLVD #1401 LOS ANGELES, CA 90024 HUMAN RESOURCES | Yrs. on this job 10.00  Yrs. employed in this line of work/profession 10.0 | Name & Address of Employer  ☐ Self Employed | Yrs. on this job  Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business OWNER BUILDER | Business Phone (incl. area code) 310-591-7596 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  ☐ Self Employed | Dates (from-to)  Monthly Income $ | Name & Address of Employer  ☐ Self Employed | Dates (from-to)  Monthly Income $ |
|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Case 2:11-cv-10 MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION 74 Page ID #:48

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 52,500 | $ | $ 52,500 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 947,00 | $ 5078.13 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 243.75 | .08 |
| Dividends/Interest | | | | Real Estate Taxes | 551,10 | 551.11 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | 999,99 | 999,99 |
| | | | | Other: HOA DUES | 200,01 | |
| Total | $ 52,500 | $ | $ 52,500 | Total | $ 2941,85 | $ 6629,31 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ X ] Jointly [ ] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| PRE PD FEES/GFTS & GRNTS | | | | |
| List checking and savings accounts below | | Name and address of Company | $ Payments/Months | $ |
| Name and address of Bank, S&L, or Credit Union BANK OF AMERICA | | BOA MBNA , | | |
| Acct. no. 68831005408599 | $ 160000 | Acct. no. 5815 | 45464 | 543 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CHASE | $ Payments/Months | |
| Acct. no. | $ | Acct. no. 4266841056212861 | 78 / 50 | 3919 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CHASE , | $ Payments/Months | |
| Acct. no. | $ | Acct. no. 5148749000037303 | 410 / 50 | 20534 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company DISCOVER FIN SVCS , | $ Payments/Months | |
| Acct. no. | $ | Acct. no. 601100073079 | 29 / 53 | 1541 |
| Stocks & Bonds (Company name/number & description) | $ | Name and address of Company SCA/MAYTAG , | $ Payments/Months | |
| | | Acct. no. 8935627001186563 | 25 / 3 | 81 |
| Life insurance net cash value Face amount: $ | $ | Name and address of Company WF FIN BAN | $ Payments/Months | |
| Subtotal Liquid Assets | $ 160000 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 18330000 | | | |
| Vested interest in retirement fund | $ | Acct. no. 4071100000854 | 50 / 31 | 1541 |
| Net worth of business(es) owned (attach financial statement) | $ | Name and address of Company | $ Payments/Months | |
| Automobiles owned (make and year) | $ | | | |

ML03                      3010901449-101

Case 2:11-cv-10072-ODW-FFM  ASSETS AND LIABILITIES (cont.)  Filed 12/05/11  Page 25 of 74  Page ID #:49

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ↓ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 10660 WILSHIRE BLVD. #140 LOS ANGELES CA 90024 BANK OF AMERICA | OO CONDO | 17000000 $ 6883100 | $ 113340 | $ | $ 947 | $ 2643 | $ |
| 10809 WELLWORTH AVE LOS ANGELES CA 90024 WAMU | SH SFD | 1330000 3010906 | 920000 | | 5079 | 1485 | |
| Totals | | $ 18330000 | $ 1033340 | $ | $ 6026 | $ 4128 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | | |
|---|---|---|---|---|---|---|---|
| | | If you answer "yes" to any questions a through i, please use continuation sheet for explanation. | | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
| a. Purchase price | $ | a. Are there any outstanding judgments against you? | | | X | | |
| b. Alterations, improvements, repairs | | b. Have you been declared bankrupt within the past 7 years? | | | X | | |
| c. Land (if acquired separately) | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | | X | | |
| d. Refinance (incl. debts to be paid off) | 113,340 | | | | | | |
| e. Estimated prepaid items | 6,261 | d. Are you a party to a lawsuit? | | | X | | |
| f. Estimated closing costs | 3,912 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA, VA case number, if any, and reasons for the action.) | | | X | | |
| g. PMI, MIP, Funding Fee | | | | | | | |
| h. Discount (if Borrower will pay) | | | | | | | |
| i. Total costs (add items a through h) | 123,513 | | | | | | |
| j. Subordinate financing | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | | X | | |
| k. Borrower's closing costs paid by Seller | | g. Are you obligated to pay alimony, child support, or separate maintenance? | | | X | | |
| l. Other Credits (explain) | | h. Is any part of the down payment borrowed? | | | X | | |
| | | i. Are you a co-maker or endorser on a note? | | | X | | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 975,000 | j. Are you a U.S. citizen? | | X | | | |
| | | k. Are you a permanent resident alien? | | | X | | |
| n. PMI, MIP, Funding Fee financed | | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | | X | | | |
| o. Loan amount (add m & n) | 975,000 | m. Have you had an ownership interest in a property in the last three years? | | X | | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | (851,486) | (1) What type of property did you own--principal residence (PR), second home (SH), or investment property(IP)? | | PR | | | |
| | | (2) How did you hold title to the home--solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | S | | | |

| IX. ACKNOWLEDGMENT AND AGREEMENT |
|---|

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that I may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

| X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES |
|---|

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race or sex, under Federal regulations this lender is required to note the information on the basis of visual observation or surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | X | I do not wish to furnish this information | CO-BORROWER | | I do not wish to furnish this information |
|---|---|---|---|---|---|
| Ethnicity: | | Hispanic or Latino    Not Hispanic or Latino | Ethnicity: | | Hispanic or Latino    Not Hispanic or Latino |
| Race: | | American Indian or    Asian    Black or | Race: | | American Indian or    Asian    Black or |

# EXHIBIT 3

# ADJUSTABLE RATE NOTE
### (One-Year LIBOR Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

DECEMBER 06, 2006                 GLENDALE,                    CALIFORNIA
[Date]                              [City]                       [State]

10660 WILSHIRE BLVD. #1401, LOS ANGELES, CA 90024
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 975,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is WASHINGTON MUTUAL BANK, FA

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.250 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS

### (A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on FEBRUARY 01, 2007. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on JANUARY 01, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O.BOX 78148 PHOENIX, AZ 85062-8148

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $ 5,078.13 before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.



**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of JANUARY 01, 2012      , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO
percentage points ( 2.000        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 11.250        % or less than 2.000       %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.250       %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**
The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.   **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.   **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) **Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.   **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.  **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
DARYOUSH  JAVAHERI                    -Borrower                                                       -Borrower


_____ (Seal)          _____ (Seal)
                                              -Borrower                                                       -Borrower


_____ (Seal)          _____ (Seal)
                                              -Borrower                                                       -Borrower


_____ (Seal)          _____ (Seal)
                                              -Borrower                                                       -Borrower


*(Sign Original Only)*

**W170NMU** (0407)                                   Page 5 of 5

# EXHIBIT 4

▲ **This page is part of your document - DO NOT DISCARD** ▲

**06 2765538**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**12/13/06 AT 08:00am**

# TITLE(S) :

▲ ▲



L E A D   S H E E T

FEE                                                    D.T.T.

FEE $ 76 H
DAF $ 2        24
C-20

CODE
20

CODE
19

CODE
9____

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black Ink.      **Number of AIN's Shown**

▲ **THIS FORM IS NOT TO BE DUPLICATED** ▲

# CHICAGO TITLE CO.

Recording Requested By:
**WASHINGTON MUTUAL BANK**

Return To:
**WASHINGTON MUTUAL BANK
2210 ENTERPRISE DRIVE
FLORENCE, SC 29501
DOC OPS M/S FSCE 440**

Prepared By:
**KRLA DIAZ PANIAGUA**



12/13/06

**20062765538**

*606 W 3743-H*

────────── [Space Above This Line For Recording Data] ──────────

ZCA1
M28

# DEED OF TRUST

3010901449-101

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  **DECEMBER 06, 2006**
together with all Riders to this document.

(B) "Borrower" is  **DARYOUSH JAVAHERI, A SINGLE MAN**

Borrower's address is  **10550 WILSHIRE BLVD. # 1401, LOS ANGELES, CA 90024**
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is  **WASHINGTON MUTUAL BANK, FA**

Lender is a  **FEDERAL SAVINGS BANK**
organized and existing under the laws of  **THE UNITED STATES OF AMERICA**

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**       Form 3005  1/01

-6(CA) (0207)

Page 1 of 15          Initials: _D.F_
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV 89014
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is CALIFORNIA RECONVEYANCE COMPANY, A CALIFORNIA CORP

(E) "Note" means the promissory note signed by Borrower and dated DECEMBER 06, 2006
The Note states that Borrower owes Lender NINE HUNDRED SEVENTY FIVE THOUSAND
AND 00/100                                                                    Dollars
(U.S. $   975,000.00   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than JANUARY 01, 2037
(F) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower (check box as applicable):

| [x] Adjustable Rate Rider | [x] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

-6(CA) (0207)                          Page 2 of 15                      Initials: D.S    Form 3005 1/01

4

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the  COUNTY                          of  LOS ANGELES                                     :
         [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
         THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE EXHIBIT
         AND IS MADE A PART HEREOF.

                         See  EXHIBIT "A"  *Attached*

Parcel ID Number:  4326-001-153                    which currently has the address of
10660 WILSHIRE BLVD. #1401                                          [Street]
LOS ANGELES                               [City],  California  90024   [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

     1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

06 2765558

VMP®-6(CA) (0207)                    Page 3 of 15          Initials: *O.S.*          Form 3005 1/01

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _P.J_

−6(CA) (0207)          Page 5 of 15          Form 3005 1/01

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Initials: _D.S._

VMP®-6(CA) (0207)                     Page 6 of 15                     Form 3005 1/01

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Initials: D.F

☺ –6(CA) (0207)        Page 7 of 15        Form 3005 1/01

06 2765538

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Initials: _b.f_

-6(CA) (0207)               Page 8 of 15               Form 3005 1/01

06 2765538

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

-6(CA) (0207)                          Page 11 of 15                          Form 3005 1/01

Initials: b.F

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

-6(CA) (0207)                        Page 12 of 15         Initials: D.J.          Form 3005 1/01

14

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

Initials: _DS_

VMP®-6(CA) (0207)          Page 13 of 15          Form 3005 1/01

15

ZCA2

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____       _____ (Seal)
                                                              -Borrower
                                DARYOUSH JAVAHERI


_____       _____ (Seal)
                                                              -Borrower


                _____ (Seal)       _____ (Seal)
                                     -Borrower                              -Borrower


                _____ (Seal)       _____ (Seal)
                                     -Borrower                              -Borrower


                _____ (Seal)       _____ (Seal)
                                     -Borrower                              -Borrower

06 2765538

-6(CA) (0207)                    Page 14 of 15                    Form 3005 1/01

16

State of California
County of  LOS ANGELES

On  December 7, 2006   before me,  L. D. Scott, a Notary Public

} ss.

personally appeared

DARYOUSH JAVAHERI

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

LDScott

(Seal)



L. D. SCOTT
Commission # 1589155
Notary Public - California
Los Angeles County
My Comm. Expires Jul 3, 2009

06 2765538

—6(CA) (0207)

Page 15 of 15

Initials: D.J.

Form 3005 1/01

17

EXHIBIT "A"

A CONDOMINIUM COMPOSED OF:

PARCEL 1:

(A)  AN UNDIVIDED 1/132ND INTEREST IN AND TO LOT 1 OF TRACT NO. 39372, IN THE CITY
OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN
BOOK 987, PAGES 32 AND 33 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

EXCEPT THEREFROM ALL OF THE 132 UNITS OF TRACT 39372 AS SHOWN AND DEFINED ON THE
CONDOMINIUM PLAN, RECORDED SEPTEMBER 23, 1981 AS INSTRUMENT NO. 81-946528, OFFICIAL
RECORDS, OF SAID COUNTY.

(B)  UNIT 1401, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN REFERRED TO ABOVE.

PARCEL 2:

AN EXCLUSIVE EASEMENT, APPURTENANT TO PARCEL 1 ABOVE, FOR PARKING PURPOSES, OVER
THAT PORTION OF LOT 1 OF SAID TRACT 39372, SHOWN AS PARKING SPACES 235 AND 236 ON
THE PARKING PLAN ATTACHED TO THE DECLARATION OF RESTRICTIONS, RECORDED SEPTEMBER 23,
1981 AS INSTRUMENT NO. 81-946527, OFFICIAL RECORDS.

PARCEL 3:

AN EXCLUSIVE EASEMENT APPURTENANT TO PARCEL 1 ABOVE, FOR MAIDS ROOMS OVER THAT
PORTION OF LOT 1 OF SAID TRACT NO. 39372, AS SHOWN AS AREAS 138-MR AS SHOWN AND
DEFINED ON CONDOMINIUM PLAN REFERRED TO ABOVE.

06 2765538

DESCLTR-08/08/94bk

R2US
M28

3010901449-101

# FIXED/ADJUSTABLE RATE RIDER

### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this          6TH          day of
DECEMBER, 2006        , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of
the same date given by the undersigned ("Borrower") to secure Borrower's
Fixed/Adjustable Rate Note (the "Note") to
WASHINGTON MUTUAL BANK, FA

("Lender") of the same date and covering the property described in the Security
Instrument and located at:

      10660 WILSHIRE BLVD. #1401
      LOS ANGELES, CA 90024
                (Property Address)

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE
AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
    The Note provides for an initial fixed interest rate of          6.250          %. The
Note also provides for a change in the initial fixed rate to an adjustable interest rate, as
follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The initial fixed interest rate I will pay will change to an adjustable interest rate on
the first day of   JANUARY 01, 2012          , and the adjustable interest rate I will
pay may change on that day every 12th month thereafter. The date on which my initial
fixed interest rate changes to an adjustable interest rate, and each date on which my
adjustable interest rate could change, is called a "Change Date."



MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR – Single Family –
Fannie Mae Uniform Instrument                             Form 3187 6/01
&#x24D2;-168R (0401)
Page 1 of 4    Initials: D.S.
VMP Mortgage Solutions
(800)521-7291



06 2765538

19

**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding     TWO                              percentage points (       2.000     %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than   11.250                  % or less than     2.000                 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than       11.250     %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

06 2765538

-168R (0401)                    **Page 2 of 4**      Initials: _D.S._           **Form 3187 6/01**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Initials: D.S.

-168R (0401)                    Page 3 of 4                    Form 3187 6/01

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
                      -Borrower                                -Borrower
                                          DARYOUSH JAVAHERI

_____ (Seal)          _____ (Seal)
                      -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                -Borrower

-168R (0401)                    Page 4 of 4                    Form 3187 6/01

# CONDOMINIUM RIDER

8RUS                                                              3010901449-101
M28

THIS CONDOMINIUM RIDER is made this     6TH     day of DECEMBER     2006  ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower") to secure Borrower's Note to

WASHINGTON MUTUAL BANK, FA

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:

10860 WILSHIRE BLVD. #1401, LOS ANGELES, CA 90024

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

WILSHIRE MANNING

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use of
its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code
of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all
dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-8R (0008)         Form 3140 1/01
Page 1 of 3         Initials:
VMP MORTGAGE FORMS - (800) 521-7291

23

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

05 2765538

*24*

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

| | | |
|---|---|---|
| _____ (Seal) | _Dragoh Javahi_ (Seal) | |
| -Borrower | -Borrower | |
| | **DARYOUSH  JAVAHERI** | |

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

06 2765538



# S P L INC.

**GOVERNMENT CODE 27361.7**

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary _____ *L.D. Scott* _____

Notary Identification Number _____ *158 9155* _____

Vender Identification Number _____ *NNA 1* _____

County Where Bond Is Filed _____ *Los Angeles* _____

Date Commission Exp _____ *Jul 3, 2008* _____

Place of Execution: *Los Angeles*        SPL, Inc. as agent

DATE: *12 / 12 / 06*        _____

                                                    **Signature**

State of California          )
County of _____  )
On_____before me,_____personally appeared,_____
personally known to me (or proved to me the basis of satisfactory evidence) to be the person (s) whose name (s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her their authorized capacity (ies), and that by his/her/their signature (s) on the instrument the person (s), or the entity upon behalf of which the person (s) acted, executed the instrument.    WITNESS my hand and official seal.    Signature

_____

I CERTIFY UNDER PENALTY OF PERJURY THAT THIS MATERIAL IS A TRUE COPY OF THE ORIGINAL MATERIAL CONTAINED IN THE DOCUMENT:

Place of Execution:_____        SPL, Inc. as agent

DATE:_____/_____/_____        _____

                                                    **Signature**

06 2765538

# EXHIBIT 5

RECORDING REQUESTED BY

CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311



05/28/2010

*20100687282*

Space above this line for recorder's use only

Trustee Sale No. 243380CA   Loan No. 3010901449   Title Order No. 464288

## IMPORTANT NOTICE

NOTE: After having been recorded, this Assignment should be kept with the
Note and the Deed of Trust hereby assigned.

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to Bank of America,
National Association successor by merger to LaSalle Bank National Association as trustee for
Washington Mutual Mortgage Pass-Through Certificates Series 2007-HY1Trust all beneficial interest
under that certain Deed of Trust dated 12-06-2006, executed by DARYOUSH JAVAHERI, A SINGLE
MAN, as Trustor; to CALIFORNIA RECONVEYANCE COMPANY as Trustee; and Recorded 12-13-
2006, Book , Page , Instrument 06 2765538 of official records in the Office of the County Recorder of
LOS ANGELES County, California. **APN:** 4326-001-153 **Situs:** 10660  WILSHIRE BLVD #1401, , LOS
ANGELES, CA 90024

TOGETHER with the note or notes therein described and secured thereby, the money due and to
become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust
including the right to have reconveyed, in whole or in part, the real property described therein.

DATE: May 18, 2010

JPMorgan Chase Bank, National Association, successor in interest to WASHINGTON MUTUAL
BANK, FA

_____

Colleen Irby, Officer

FA_MERGE.DOC

1

Trustee Sale No. 243380CA Loan No. 3010901449 Title Order No. 464288

*3*

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On May 18, 2010 before me, JESSICA ERIN SNEDDEN, "Notary Public", personally appeared Colleen Irby, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

JESSICA ERIN SNEDDEN
COMM. # 1658851
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. JULY 24, 2013

2

FA_MERGE.DOC

**This page is part of your document - DO NOT DISCARD**



## 20100687282





**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**05/20/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201005200230002

00002392098



002692265

**SEQ:**
**06**

**DAR - Title Company (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

T79

# EXHIBIT 6

**This page is part of your document - DO NOT DISCARD**



# 20100687283



Pages:
0004

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**05/20/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



L E A D S H E E T



201005200230002

00002392099



002692265

**SEQ:
07**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

T79

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800 892-6902
(818)775-2258 (Fax)



---

Space above this line for recorder's use only

Trustee Sale No. 243380CA   Loan No. 3010901449   Title Order No. 464288

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION**, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $22,851.64 as of May 18, 2010 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

3

Trustee Sale No. 243380CA   Loan No. 3010901449   Title Order No. 464288

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Association, at 7301 BAYMEADOWS WAY , JACKSONVILLE, FL 32256, 800-848-9380.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.  NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY is the duly appointed Trustee under a Deed of Trust dated 12-06-2006, executed by DARYOUSH JAVAHERI, A SINGLE MAN, as trustor, to secure obligations in favor of WASHINGTON MUTUAL BANK, FA, as Beneficiary Recorded 12-13-2006, Book , Page , Instrument 06 2765538 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust. APN: 4326-001-153 Situs: 10660 WILSHIRE BLVD #1401, , LOS ANGELES, CA 90024 Including the note(s) for the sum of $975,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 02/01/2010 MONTHLY INSTALLMENT OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR SAID MONTHLY BILLING; AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR EACH MONTHLY BILLING CYCLE.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

SEE ATTACHED DECLARATION

DATE: May 18, 2010

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

LUIS ALVARADO,
Assistant Secretary

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Borrowers:          **DARYOUSH JAVAHERI**

Property Address:    **10660 WILSHIRE BLVD., LOS ANGELES CA 90024**

Loan Number:        **3010901449**

# DECLARATION OF COMPLIANCE

*(California Civil Code Section 2923.5(b))*

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☒   The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☐   The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐   The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

  ☐    The real property is not an owner-occupied single family residence.

  ☐    The loan was not originated between January 1, 2003 and December 31, 2007.

  ☐    The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

  ☐    The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

  ☐    The borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

I certify under penalty of perjury under the laws of the State of California that the above is true and correct.

JP Morgan Chase Bank, National Association

Date:   05/17/10
City/State:  Jacksonville, Florida            *Clement J. Durkin*
                                              Clement J. Durkin

# EXHIBIT 7

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA  91311
800-892-6902

**Trustee Sale No.   243380CA**
Loan No.            3010901449
Title Order No.     464288

_____

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12-06-2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 12-12-2011 at 9:00 AM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 12-13-2006, Book , Page , Instrument 06 2765538,         of official records in the Office of the Recorder of LOS ANGELES County, California, executed by:  DARYOUSH JAVAHERI, A SINGLE MAN, as Trustor, WASHINGTON MUTUAL BANK,  FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state.  Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust.   The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Place of Sale: BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC CENTER PLAZA, POMONA, CA

Legal Description:  A CONDOMINIUM COMPOSED OF:
PARCEL 1:
(A) AN UNDIVIDED 1/132ND INTEREST IN AND TO LOT 1 OF TRACT NO. 39372, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 987, PAGES 32 AND 33 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
EXCEPT THEREFROM ALL OF THE 132 UNITS OF TRACT 39372 AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, RECORDED SEPTEMBER 23, 1981 AS INSTRUMENT NO. 81-946528, OFFICIAL RECORDS, OF SAID COUNTY.
(B) UNIT 1401, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN REFERRED TO ABOVE.
PARCEL 2:
AN EXCLUSIVE EASEMENT, APPURTENANT TO PARCEL 1 ABOVE, FOR PARKING PURPOSES, OVER THAT PORTION OF LOT 1 OF SAID TRACT 39372, SHOWN AS PARKING SPACES 235 AND 236 ON THE PARKING PLAN ATTACHED TO THE DECLARATION OF RESTRICTIONS, RECORDED SEPTEMBER 23, 1981 AS INSTRUMENT NO. 81-946527, OFFICIAL RECORDS.
PARCEL 3:
AN EXCLUSIVE EASEMENT APPURTENANT TO PARCEL 1 ABOVE, FOR MAIDS ROOMS OVER THAT PORTION OF LOT 1 OF SAID TRACT NO. 39372, AS SHOWN AS AREAS 138-MR AS SHOWN AND DEFINED ON CONDOMINIUM PLAN REFERRED TO ABOVE.

Amount of unpaid balance and other charges: $1,105,716.79 (estimated)

Street address and other common designation of the real property:   10660  WILSHIRE BLVD #1401
                                                                     LOS ANGELES, CA 90024

APN Number:  4326-001-153

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares:
that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or
that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone;  by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 11-18-2011

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

_____

MARCO RIVERA, ASSISTANT SECRETARY

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR
ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.
California Reconveyance Company
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA  91311
800-892-6902

For Sales Information:
(714) 730-2727 or www.lpsasap.com
(714) 573-1965 or www.priorityposting.com

## NOTICE OF SALE
### PURSUANT TO SECTION 2924.8 OF THE CIVIL CODE

Foreclosure process has begun on this property, which may affect your right to continue to live in this property. Twenty days or more after the date of this notice, this property may be sold at foreclosure. If you are renting this property, the new property owner may either give you a new lease or rental agreement or provide you with a 60-day eviction notice. However, other laws may prohibit an eviction in this circumstance or provide you with a longer notice before eviction. You may wish to contact a lawyer or your local legal aid or housing counseling agency to discuss any rights you may have.

依据民法典第2924.8章

因本房产的赎进程序已经开始，这可能会影响您在此继续居住的权利。从本通知起的二十天后，本房产可能会被出售。如果你是租房户，新的房主可能给你新的出租协议,或通知您在60天内搬家。但有些法律可能禁止在此情况下的清房，或可为您提供更长的搬家期限。您可以与您的律师,您当地的法律援助或房屋咨询机构讨论您的有关权利

머매 통고

민법 제 2924.8 항에 의거

이 건물에 대한 차압 절차가 시작되었으며, 그로 인해 귀하가 이 건물에서 계속해서 거주할 수 있는 권리에도 영향이 미칠 수 있습니다. 이 통고문의 날짜로부터 20일 혹은 그 후에, 이 건물은 차압 매매될 수 있습니다. 만약 귀하가 이 건물을 임차하고 있다면, 새로운 건물 소유주는 귀하와 세임대차 계약을 하거나 또는 60일 이내 퇴거하라는 통고를 할 수 있습니다. 그러나, 다른 법률들은 이런 상황에서의 퇴거를 금지하거나 또는 귀하에게 퇴거하기 전까지 연장된 기간의 통고를 하도록 할 수도 있습니다. 귀하의 권리에 대한 상담을 하기 위해 귀하는 변호사 또는 귀하가 있는 지역의 법률 구호 기관 혹은 주택 상담 기관에 연락할 수도 있습니다.

### ANUNCIO DE VENTA
### SEGÚN LA SECCIÓN 2924.8 DEL CÓDIGO CIVIL

El proceso de ejecución de hipoteca ha comenzado en esta propiedad, lo que puede afectar su derecho de vivir en esta propiedad. La propiedad puede ser vendida en ejecución de hipoteca veinte días o más después de la fecha de este aviso. Si usted está rentando esta propiedad, el nuevo dueño de la propiedad puede darle a usted un nuevo contrato de arrendamiento o alquiler o darle un aviso de desalojo de 60-días. Sin embargo, otras leyes tal vez puedan prohibir un desalojo en esta circunstancia o proveerle a usted un aviso de desalojo de más tiempo para que desaloje la propiedad. Tal vez usted desee comunicarse con un abogado o su ayuda legal de la localidad o agencia de consejería de vivienda para hablar de cualquier derecho que usted tal vez tenga.

### PAUNAWA SA PAGBENTA
### BATAY SA SEKSYON 2924.8 NG NILAGDAANG SIBIL

Ang proseso ng pagreremata ay nagsimula na sa pag-aaring ito, na kung saan ay maaaring makaapekto sa inyong karapatan na tuluyang manirahan sa pag-aaring nabanggit. Dalawampung araw o higit pa matapos ang petsang naisagawa ang paunawang ito, ang nasabing pag-aari ay maaari nang ibenta batay sa pagremata. Kung kayo ay nangungupahan sa pag-aaring ito, ang bagong may-ari ay maaaring magbigay ng bagong kasunduan sa paghiram o pagbenta o bigyan kayo ng kasulatan na paunawa na makalipat sa loob ng 60 na araw. Gayunpaman, maaaring ipagbawal ng ibang batas ang pagpapaalis sa pagkakataong ito o maaaring bigyan kayo ng mas mahabang panahon bago ang pagpapaalis. Minumungkahi kayong makipagbigay alam sa inyong abogado o lokal na katulong pang-legal o ahensiya ng payong pabahay upang pag-usapan ang alinmang karapatan na kayo ay mayroon.

### THÔNG BÁO BÁN
### THEO ĐIỀU 2924.8 BỘ LUẬT DÂN SỰ

Việc bắt đầu tịch thu tài sản này có thể ảnh hưởng đến quyền tiếp tục sinh sống của bạn tại đây. Bắt đầu từ hai mươi ngày trở đi sau thông báo, tài sản này có thể bị tịch thu để trả nợ. Nếu bạn đang mướn nhà tại đây, chủ tài sản mới sẽ gửi cho bạn cam kết mới về việc thuê hoặc mướn hoặc có thể sẽ gửi cho bạn thông báo rời khỏi nhà trong vòng 60 ngày. Tuy nhiên,một số luật khác có thể không cho phép việc yêu cầu rời khỏi nhà trong trường hợp này mà gửi cho bạn thông báo sớm hơn trước khi yêu cầu bạn rời đi. Bạn nên liên hệ với luật sư hoặc tổ chức giúp đỡ luật địa phương hoặc cơ sở tư vấn nhà để tham khảo những quyền bạn có.

2924.8(c) - Sunsets Jan. 1, 2013

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

## CV11- 10072 JFW (FMOx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [_] **Southern Division** | [_] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

Name & Address:
DOUGLAS GILLIES (CA SBN 53602)
douglasgillies@gmail.com
3756 Torino Drive, Santa Barbara, CA 93105
(805) 682-7033
Attorney for Plaintiff DARYOUSH JAVAHERI

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | CASE NUMBER |
|---|---|
| DARYOUSH JAVAHERI<br><br>PLAINTIFF(S)<br>v.<br><br>JPMORGAN CHASE BANK N·A·,<br>and DOES 1- ι0. inclusive<br><br>DEFENDANT(S). | CV11-10072 JFW (FMOX)<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): <u>JPMORGAN CHASE BANK, N.A.</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Douglas Gillies</u>, whose address is <u>3756 Torino Drive, Santa Barbara, CA 93105</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____ DEC ‑ 5 2011 ____

By: _____
     Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| DARYOUSH JAVAHERI | JPMORGAN CHASE BANK |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| DOUGLAS GILLIES, ATTORNEY<br>3756 Torino Drive, Santa Barbara, CA 93105<br>(805) 682-7033 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ 145,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
12 U.S.C. 1332(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS | TORTS | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | PERSONAL INJURY | PERSONAL PROPERTY | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 310 Airplane | ☐ 370 Other Fraud | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☒ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV11 - 10072

BY FAX

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☑ Yes
If yes, list case number(s): <u>CV10-8185 ODW</u>

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
| --- | --- |
| Los Angeles County - Plaintiff Daryoush Javaheri | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
| --- | --- |
| | New York State - Defendant JPMorgan Chase |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
| --- | --- |
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _[signature]_ Date December 2, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |